Ima Lea Weisinger PIERCE, et vir,
Appellants,

v.

ESTATE of Harry A. HAVERLAH,
Deceased et al., Appellees.

No. 342.

Court of Civil Appeals of Texas.

Tyler.

May 2, 1968.

Rehearing Denied May 30, 1968.

Sallas, Griffith & Meriwether, Joe E. Griffith, Crockett, for appellants.

Tate McCain, Palestine, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, for appellees.

MOORE, Justice.

This is an appeal from an order granting a summary judgment. Ima Lea Weisinger Pierce, joined by her husband, E. A. Pierce, hereinafter referred to as appellant, filed this suit on April 18, 1967, against the Estate of Dr. Harry A. Haverlah, deceased, and Harry L. Brown, individually and as Independent Executor of the Estate of· Harry A. Haverlah, alleging that prior to the year 1960, Dr. Haverlah voluntarily transferred to Mrs. Pierce nine (9) stock certificates representing 856 shares of stock in the Franklin Life Insurance Company; that subsequently, on or about June 29, 1960, Dr. Haverlah accused her of theft of the certificates and demanded that she return the same; that on June 30, 1960, appellee, Harry L. Brown, acting either individually or as the agent of Dr. Haverlah, came to her at her place of employment and accused her of stealing the stock and threatened her with criminal prosecution, jail and imprisonment unless she transferred the same back to Dr. Haverlah; that as a result of such threats, coercion and duress, she was induced to return the stock and sign a letter transfer-

ring the stock back to Dr. Haverlah. She further alleged that the coercion and duress exercised by Brown on June 30, 1960, continued to dominate her mind at all times subsequent since that date, and as a result, she remained so coerced and frightened that she was unable to bring herself to institute suit to recover the stock until shortly before she filed her suit on April 18, 1967. Appellant's prayer was for a recovery of the stock certificates, or the market value thereof, together with exemplary damages in the amount of $20,000.00.

Appellees denied generally the allegations of the appellant's petition and specially denied that Brown was acting as Dr. Haverlah's agent. They also affirmatively alleged that appellant's cause of action was barred by the two and four year statutes of limitations as provided in Article 5526 and Article 5529, Vernon's Ann.Tex.Civ. Stat.

Thereafter, appellees filed a verified motion for summary judgment, together with a supporting affidavit of appellee, Harry L. Brown. Appellant opposed the motion and filed an affidavit sworn to by Mrs. Pierce.

After a hearing, the trial court granted appellees' motion and rendered a take-nothing judgment against the appellant, from which she duly perfected this appeal.

Appellant asserts that the judgment must be reversed because the evidence raises a genuine issue of material fact upon the question of (1) whether she was forced to transfer the stock as a result of coercion and duress; and upon the secondary question of (2) whether there was any evidence of probative force showing that such coercion and duress was of such a continuing nature as to prevent her from filing suit within the applicable limitational period.

It has been said that a defendant moving for summary judgment on the whole case assumes the negative burden of showing as a matter of law that the plaintiff has no cause of action against him. Neigut v. McFadden (Tex.Civ.App.), 257 S.W.2d 864, 868; McDonald, Texas Civil Practice, Vol. 4, Sec. 17.26.1.

It is now settled that the burden of proving that there is no genuine issue of any material fact is upon the movant, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party ruling for a summary judgment. In determining a motion thus depending upon extrinsic evidence, the court's task is analogous to that which he performs on a motion for directed verdict. He accepts as true all evidence of the party opposing the motion which tends to support such party's contention and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

With these rules in mind, we turn first to the question of whether the evidence offered by the movants (appellees) was sufficient, as a matter of law, to show that Mrs. Pierce was not induced to transfer the stock back to Dr. Haverlah because of any fraud, coercion or duress practiced upon her by appellee, Harry L. Brown. In an effort to disprove fraud, coercion or duress, appellees filed the affidavit of Harry L. Brown in which he denied that he had practiced any fraud, coercion or duress upon Mrs. Pierce. According to his testimony, he prepared a letter dated June 30, 1960, addressed to Mrs. Pierce's stockbrokers in Fort Worth, Texas, directing them to transfer the stock back to Dr. Haverlah, and upon presenting it to Mrs. Pierce, she voluntarily signed the letter.

As we view it, the affidavit of Brown does nothing more than deny appellant's allegations of duress based upon threats of prosecution. It merely presents a situation where conflicting inferences may be drawn. Under such circumstances, appellant was under no burden to contravene the motion. Box v. Bates, 162 Tex.

184, 346 S.W.2d 317; McDonald, Texas Civil Practice, Vol. 4, Sec. 17.26.3.

Appellant did, however, file an opposing affidavit sworn to by Mrs. Pierce, in which she stated that Brown had accused her of stealing the stock and as a result of this and other threats made by him, she was induced to transfer the stock to Dr. Haverlah. She also specifically adopted all the statements and allegations theretofore made by her in her original petition. In her original petition, she alleged that Harry L. Brown came to her place of employment and threatened her with criminal prosecution, jail, prison, humiliation, and/or embarrassment unless she transferred such shares back to the said Dr. Harry A. Haverlah. She insisted, however, that she was not guilty of theft, but had received the stock from Dr. Haverlah as a gift. Thus, we believe that even though appellees' evidence was deficient and required no reply, we must nevertheless consider the factual statements in her petition since same was adopted as a part of her controverting affidavit.

■ Generally speaking, any coercion of another, either mental, physical or otherwise, causing him to act contrary to his own free will or submit to a situation or a condition against his own volition or interest, constitutes "duress." Hailey v. Fenner & Beane (Tex.Civ.App.), 246 S.W. 412.

■ The modern doctrine is that whether or not a threat constitutes duress is a question of fact dependent upon all the circumstances and the mental effect on the party claiming duress. Formerly it was held that threats of a lawful arrest and prosecution did not constitute such duress as to avoid a contract, but the modern view is that the threatened prosecution need not be for a crime or offense of which the party threatened is not guilty, but that duress may arise from threats of prosecution for an offense of which the party threatened is actually guilty. The question is, How did such threats affect the mind of the party who was threatened and made the contract? Sabinal State Bank v. Ebell (Tex.Civ.App.), 294 S.W. 226, 227; Pfeuffer v. Haas (Tex.Civ.App), 55 S.W.2d 111.

Thus, if appellees demanded of Mrs. Pierce the return of the stock and the letter of transfer, and intentionally, by any form of expression, induced her to believe that, if she failed to comply with such demands, she would be prosecuted on the charge of theft, and if the fears of Mrs. Pierce were aroused to such an extent that she surrendered the stock and signed the letter of transfer to avoid such prosecution, the transaction was a result of duress and she would be entitled to recover the stock certificates or for the market value of the stock. Landa v. Obert, 78 Tex. 33, 14 S.W. 297; Sabinal State Bank v. Ebell, supra; Union Exchange National Bank of New York v. Joseph, 231 N.Y. 250, 131 N. E. 905, 17 A.L.R. 323, 337.

■ The question of what constitutes "duress" is a matter of law, but the question of whether it exists in a particular situation is generally a question of fact. Sanders v. Republic National Bank of Dallas (Tex.Civ.App.), 389 S.W.2d 551; Winget v. Rockwood, 8 Cir., 69 F.2d 326, 329; Vol. 13A, Words & Phrases, page 472.

■ When viewed in a light most favorable to appellant, we think the evidence offered by appellant constitutes at least some evidence of probative force sufficient to raise an issue of fact upon the question of whether Mrs. Pierce was induced to transfer by reason of coercion or duress and also upon the question of whether Brown was acting as the agent of Dr. Haverlah. Had such evidence been developed before a jury, we think the trial court would not have been authorized to instruct a verdict for appellees. Consequently, we are inclined to the view that the record shows that appellees not only failed to demonstrate the lack of a genuine issue of material fact, but also that appellant's evi-

dence was sufficient to raise an issue upon the question of coercion and duress.

We turn now to the second question of whether appellant's cause of action was barred by the statute of limitations. As we construe appellant's pleadings, she asserts a cause of action for the recovery of title and possession of the stock certificates and alternatively for damages for conversion.

It is well settled that a cause of action for damages for conversion is barred by the two year statute of limitations. Article 5526, supra; 14 Tex.Jur.2d, Sec. 76, p. 64.

With reference to appellant's cause of action for the recovery of the stock certificates, it has been held that a stock certificate, that is, the certificate itself, as distinguished from the shares, constitutes personal property. Consequently, the cause of action for title and possession of the stock certificate would constitute a cause of action for the recovery of personal property and would likewise be barred by the two year statute of limitations. Article 5526, supra; Davidson v. Atmar (Tex.Civ.App.), 243 S.W. 662.

Appellant candidly concedes that unless some overriding principle tolled or suspended the running of the statutes, every conceivable statute of limitations has worked a bar to appellant's claim. She contends, however, that such a principle exists in that the evidence shows that the duress and coercion continued until shortly before suit was filed and as a result, the statute was tolled or suspended.

Appellees assert that duress does not suspend the running of the statute and therefore appellant's claim was barred by the two year statute as a matter of law. Alternatively, they assert that appellant's conduct in delaying the filing of her suit must be tested by the standard of an ordinarily prudent person, and when so tested, the evidence conclusively shows that such threats would not have prevented an ordinarily prudent person from filing suit within the limitational period and certainly would not have been such as to prevent an ordinarily prudent person from filing suit for almost seven years.

In Volume 37, Tex.Jur.2d, page 217, Limitation of Actions, Sec. 77, it is stated:

"In actions based on duress or undue influence, the operation of the statute of limitations is tolled or suspended and the cause of action is deemed not to accrue until the time that duress or undue influence ceases to exist. * * *"

See also Cadena v. Cadena (Tex.Civ.App.), 223 S.W.2d 678; Besteiro v. Besteiro (Tex.Civ.App.), 45 S.W.2d 379; 34 Am. Jur., Sec. 236, p. 193.

Upon removal of the duress or undue influence, the statute begins to run. 34 Am. Jur., Sec. 236, p. 193.

Whether the alleged duress was such that it continued to dominate the mind of the person subjected thereto must be determined from all the surrounding facts and circumstances. 54 C.J.S., Limitations of Actions, § 197, p. 201.

The only excuse offered by appellant for the delay of almost seven years in filing the suit was her continuing fear of prosecution.

In an effort to demonstrate that her fear of prosecution did not, in fact, continue until the present suit was filed, appellees say in their verified motion for summary judgment that prior to the time the present suit was filed, Mrs. Pierce and husband attempted to intervene in another suit and that the testimony previously given by her ancillary to the attempted intervention establishes, as a matter of law, that the alleged coercion and duress was not of such operative force as to raise an issue of fact that the appellant was incapacitated from instituting this proceeding within the applicable limitational period. The cause of action in which appellant sought to inter-

vene was styled Minnie Eva Yelverton et al. v. Harry L. Brown et al. Cause No. 3833, in the District Court of Anderson County, Texas. By her plea of intervention in that case, appellant alleged practically the same cause of action as she alleged here. In connection with the hearing on the motion to strike the intervention (which was granted) appellant, Mrs. Pierce, gave testimony stating that prior to the time she intervened in that suit, she had gone to see an attorney, Mr. J. B. Sallas, and that as a result of her conversation with him, she was relieved of her concern of the coercive statements and duress. She testified as follows:

"Q On the day before you went to see him (Mr. Sallas) did you have any apprehension of your life, or your security or your physical well being?

"A Not of my life

"Q Of your security or your personal liberty?

"A No, not of my security, particularly.

"* * *

"Q Security to your personal liberty, you realize that goes to whether or not, or that gets in the issue whether or not you could go to jail for something. Had you been threatened with going to jail?

"A No.

"Q At any time by Mr. Brown or anyone else?

"A No."

Appellees further say in their verified motion that the fact that Mrs. Pierce married on February 4, 1964, more than two years before the present suit was filed, and the fact that Dr. Haverlah, one of her alleged tormentors and the prosecuting witness, died on December 4, 1964, more than two years prior to the time suit was filed constitutes evidence showing that her fear of prosecution was without foundation. Appellees also assert in their verified motion that Mrs. Pierce was at all material times a person of sound mind, over 21 years of age, and under no disability cognizable in law.

In summary judgment proceedings, where the defendant relies upon the affirmative defense of limitations, he has the burden of showing conclusively that no fact issue is in dispute. The burden is met by an evidentiary showing that the issue apparently raised by the pleadings is nonexistent. When such showing is made, defendant is entitled to a summary judgment unless the plaintiff comes forward with proof showing some excuse for the delay. Birdwell v. American Bonding Company (Tex.Civ.App.), 337 S.W.2d 120; McDonald, Texas Civil Practice, Sec. 17.26.1.

While we have hereinabove reached the conclusion that the evidence was sufficient to raise a fact question upon whether Mrs. Pierce was induced to return the stock by reason of duress, the question now presented must be viewed from an altogether different standpoint. The question presented is whether or not a party's testimony of duress caused by a continuing fear of prosecution, standing alone, is sufficient to raise a fact issue upon the question of duress irrespective of the lapse of time. If the question of continuing duress is to be tested by a purely subjective standard, then a party's testimony, standing alone, would always be sufficient to raise a question of fact irrespective of the lapse of time between the threat and the transaction attacked.

We recognize the principle that in determining whether a threat is the inducing cause of the transaction, the test of whether or not the threat produced the required degree of fear is subjective—not objective. Restatement of the Law, Contracts, Sec. 492, p. 939. However, in a situation where a person attempts to excuse himself from the operation of the statute of limitations, we think his conduct should be tested by the objective standard of an ordinarily prudent person.

Duress is a specie of fraud. In fraud cases where a person seeks to excuse himself from the statute of limitations because of lack of knowledge of the fraud, the cases are legion holding that the standard of conduct in discovering the fraud is that of an ordinarily prudent person. We see no reason why the same standard should not be applied here. To apply the subjective test would encourage stale demands and would invite the very mischief which the statute of limitations was designed to prevent. Moreover, it would permit a person to deliberately wait until all witnesses had died before presenting his claim. Therefore, we take the view that the fact issue of whether the fear of prosecution continued to exist in the mind of the person threatened to such an extent that it deprived him of his free will and judgment in seeking legal redress should rest upon what a reasonably prudent person would have done under the same or similar circumstances. Griffin v. Linn (Tex.Civ. App.), 3 S.W.2d 148.

In the comment under the definition of duress, Section 492, Restatement of the Law, Contracts, the author states:

"b. * * * in determining whether such fear as is essential for duress did in fact exist in a particular case, evidence showing whether a reasonable man would be put in fear is pertinent.

"c. The length of time that elapses between the act or threat which is asserted to amount to duress, and the transaction attacked is likewise important only as evidence bearing on the issue of whether fear produced by the act or threat continues to operate at the time that the transaction is entered into, in such force as to preclude free judgment. A state of such fear may continue long after the threats that cause it, but in determining the probability of this, time, distance, opportunity to obtain disinterested advice and protection, are all important."

While the foregoing comment relates to a definition of duress, we believe the same principles would likewise be applicable here.

A review of the facts shows only one threat was made on June 30, 1960; the threat was not made by the owner of the stock, but by his agent. There is no showing that Mrs. Pierce ever had any other contact either with Brown or Dr. Haverlah. She later married and Dr. Haverlah died. She admitted that neither Brown nor Dr. Haverlah had ever threatened her with jail. She was in good health and of sound mind at all material times, and knew in her own mind that she was not guilty of a crime.

■ We think the foregoing physical facts strongly suggest that appellant's fear rested more on fantasy than fact. Be that as it may, however, we do not believe that the question of whether limitations was tolled should be made to rest solely upon the subjective mental processes of the person seeking to excuse himself from the operation of the statute. On the contrary, we believe that in cases involving duress, like fraud, the conduct of a person seeking to excuse himself from the statute should be governed by the objective standard of conduct of an ordinarily prudent person under the same or similar circumstances. Thus, in order to prevail, the burden would be upon appellant to show that the alleged continuing duress was such that it would have, in reasonable probability, prevented a person of ordinary prudence from exercising his own free will and judgment in filing suit prior to April 18, 1965, two years before appellant filed her suit. A fact question would thus be presented unless the evidence is such that the minds of reasonable men would not differ. After applying such test to the facts before us, we think the evidence was insufficient, as a matter of law, to show that the alleged fear continued to dominate the mind of appellant and deprive her of her free will and judgment until April 18, 1965, or two years prior to the time she finally filed suit.

Griffin v. Linn, supra. Consequently, if such fear did not continue until such date, it follows that appellant's course of action, filed more than two years thereafter, was barred by the two year statute of limitations.

The judgment of the trial court is affirmed.